

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-19-2004

# USA v. Garden Homes Mgmt

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3631

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Garden Homes Mgmt" (2004). *2004 Decisions.* Paper 490.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/490

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-3631

UNITED STATES OF AMERICA

v.

GARDEN HOMES MANAGEMENT CORP.; JOSEPH WILF;
WESTBOUND HOMES, INC.; REDSTONE GARDEN APARTMENTS, INC.;
CATHY ROSENSTEIN,
Appellants

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 99-cv-2900)
District Judge:  Honorable John C. Lifland

Argued May 27, 2004

Before:  RENDELL and COWEN, <u>Circuit</u> <u>Judges</u>,
and SCHWARZER*, <u>District Judge</u>.

(Filed July 19, 2004)

Peter W. Till    [ARGUED]
Law Office of Peter W. Till
105 Morris Avenue, Suite 201
Springfield, NJ  07081
    *Counsel for Appellants*

---

\*    Honorable William W. Schwarzer, Senior District Judge for the Northern District
     of California, sitting by designation.

Clay G. Guthridge    [ARGUED]
U.S. Department of Justice
Appellate Section
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530
    *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

RENDELL, <u>Circuit Judge</u>.

Garden Homes Management Corp., et al., appeal from an order of the District Court imposing sanctions of $1,000 per day for their failure to comply with a consent order ("Consent Order").   Because we cannot be certain of the basis for the District Court's entry of sanctions, in light of certain factual misstatements by the District Court in its opinion, we will vacate the District Court's order and remand for further proceedings consistent with this opinion.

I

The facts of this case are important to our disposition and we will therefore review them in some detail.

In June 1999, the United States filed a civil action against Garden Homes and related persons and entities alleging violations of the Fair Housing Act.  In September 2001, the parties entered into the Consent Order, which obligated the appellants to, *inter alia*, contract with a compliance testing company to deter future violations of the fair

2

housing laws. At that time, the Consent Order did not specify a particular testing company.

Because the appellants failed to comply in the specified timeline with several aspects of the Consent Order, the United States brought a motion for contempt on February 14, 2002. In that motion, the United States asked the District Court to amend the Consent Order to specify the testing company with which the appellants were obligated to contract.

On March 28, 2002, the District Court issued an Order, requiring that the appellants execute a contract with the Fair Housing Council of Northern New Jersey ("FHC") by April 1, 2002. The Order further specified that the appellants would have to pay $1,000 for each day they failed to comply with the terms of the Consent Order.

On April 1, 2002, appellants' counsel stated, in a letter written to FHC, that he had communicated FHC's asking fee to his client and was awaiting approval, but requested in the interim "written Contracts for execution at the earliest possible convenience."

The next reference in the record to a testing contract is contained in correspondence sent to the appellants from FHC nearly three months later. In a letter dated June 27, 2002, FHC's counsel wrote to the counsel for the appellants, stating that "I am enclosing two copies of the proposed contract." There was no indication in that letter

that a contract had been sent to the appellants any earlier than June 27.[1]

Dissatisfied with having to contract with FHC, in August 2002, the appellants filed a motion with the District Court to amend the Order to permit the selection of an alternative testing company. In particular, the appellants complained that FHC's price for its testing services was "grossly excessive." In response, the United States urged that the motion should be denied and also filed a cross-motion to hold the appellants in contempt of the Consent Order. In its cross-motion, the United States argued that FHC had sent the counsel for the appellants a "Compliance Testing Agreement" for execution on April 4, 2002.

After nearly a year, on July 28, 2003, the District Court issued a ruling denying the appellants' motion to amend and granting the United States' cross-motion for contempt sanctions. The District Court assessed the $1,000 per day penalty beginning April 3, 2002, and ending on October 27, 2002.[2]

The appellants raise three arguments. First, they argue that the District Court's

---

[1] The record also contains a skeletal, unsigned "contract," consisting of three short paragraphs that merely set out the cost of the testing. While this contract is dated April 4, 2002, there is no indication in the record as to whether, or when, this document was transmitted by FHC to the appellants. Further, notwithstanding this Court's requests for further information from counsel prior to oral argument, the facts as to exactly what documentation was provided by one party to another during this time frame remain sketchy.

[2] Citing to the lengthy duration before the issuance of its decision, the District Court chose to penalize the appellants for only sixty days after the filing of the motion to amend.

4

finding that FHC had sent a contract on April 3, 2002, is unsupported by the record. The appellants contend that if sanctions are at all appropriate, penalties should be assessed beginning on June 28, 2002, when the appellants claim they actually received a contract for execution from FHC. Second, the appellants argue that civil sanctions were improper in light of their "good faith" efforts to seek a cheaper testing company than that which the District Court specified. Third, the appellants argue that the District Court should not have penalized them for the period during which the District Court was considering their motion to amend the Consent Order.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1345 and 42 U.S.C. § 3614(a). We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

We review the District Court's imposition of a sanction for civil contempt for abuse of discretion and will not disturb the sanction absent a legal error or a clearly erroneous finding of fact. *Harris v. City of Philadelphia*, 47 F.3d 1342, 1349 (3d Cir. 1995). The party moving the court to levy a civil contempt sanction bears a heavy burden to demonstrate the nonmovant's guilt with clear and convincing evidence. *Robin Woods, Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994).

As noted above, the District Court found that the appellants had received a compliance testing agreement by April 3, 2002. At the very least, this observation is inconsistent with the District Court's finding as stated elsewhere in its opinion that FHC

5

sent the contract to the appellants on April 4, 2002. More importantly, we do not find any indication in the record that the appellants received the contract in early April. Indeed the record contains only one item of correspondence sent in the month of April, in which counsel for the appellants expressly requested written contracts at FHC's earliest convenience. Further, the next correspondence in the record—a cover letter from FHC accompanying a compliance testing agreement—is dated June 27, 2002. In that letter, FHC made no reference to having sent a contract any earlier. Accordingly, the District Court's conclusion that the appellants had received a contract by April 3, 2002, is unsupported by the record.

While sanctions may be warranted given the course of conduct since the institution of these proceedings, or the conduct of the parties during the several months time frame at issue here, we are at a loss to determine whether the Court's imposition of sanctions beginning April 3, 2002, was based upon a mistake of fact as to precisely when appellants should have entered into a contract with FHC. On remand, the District Court may wish to modify its sanctions award in light of the facts as we view them. But because it is difficult to determine from the District Court's opinion whether the appellants' purported receipt of a contract in early April was integral to the District Court's determination, we will remand for further consideration.

### III

For the foregoing reasons, we will vacate the District Court's order and remand to

the District Court for further proceedings consistent with this opinion.[3]

---

[3]We have considered the remainder of the appellants' arguments and find them to lack merit. First, the appellants contend that their "good faith" search for a less costly compliance testing company did not warrant the imposition of civil sanctions. But evidence regarding good faith does not bar a contempt finding. *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148–49 (3d Cir. 1994). And there is reason to believe that the appellants were not acting in good faith at all. As the District Court observed, the appellants did not proffer any evidence that FHC's rates were significantly higher than those of other compliance testing companies.

Second, the appellants argue that the District Court's sanctions should have been suspended while their motion to amend the Consent Order was under consideration. But absent a stay, the appellants were obligated to comply with the District Court's order. Their motion to amend did not relieve them of their obligation to comply nor did it insulate them from suffering penalties for their failure to do so. *Harris v. City of Philadelphia*, 47 F.3d 1333, 1337 (3d Cir. 1995).

7